# In the United States Court of Federal Claims

No. 20-413C

(E-Filed:  August 10, 2020)[1]

| | |
|---|---|
| CLARKE HEALTH CARE PRODUCTS, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) ) |
| Defendant, | ) ) ) |
| and | ) ) ) |
| ARMSTRONG MEDICAL SUPPLY GROUP, LLC, | ) ) ) ) |
| Intervenor-defendant, | ) ) ) |
| and | ) ) ) |
| CONGRESSIONAL MEDICAL SUPPLY, LLC, | ) ) ) |
| Intervenor-defendant. | ) ) |

Motions for Judgment on the Administrative Record; Corrective Action Standard of Review; Agency Remand.

<u>Julie M. Nichols</u>, McLean, VA, for plaintiff.  <u>James S. Phillips</u>, McLean, VA, of counsel.

<u>Joshua A. Mandlebaum</u>, Trial Attorney, with whom appeared <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Robert E. Kirschman, Jr.</u>, Director, and <u>L. Misha Preheim</u>, Assistant

---

[1]      This opinion was issued under seal on August 5, 2020, ECF No. 34.  The parties were invited to identify source selection, propriety or confidential material subject to deletion on the basis that the material is protected/privileged.  No redactions were proposed by the parties.  <u>See</u> ECF 38 (notice).  Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. <u>Jason A.M. Fragoso</u>, United States Department of Veterans Affairs, of counsel.

<u>Jon W. Burd</u>, Washington, DC, for intervenor-defendants. <u>Kendra P. Norwood</u> and <u>Nicole E. Giles</u>, of counsel.

<u>OPINION</u>

CAMPBELL-SMITH, Judge.

Plaintiff filed this bid protest to challenge the corrective action taken by the Department of Veterans Affairs (VA). After the VA made a contract award to plaintiff for the purchase of medical equipment, the two parties who have joined this case as intervenor-defendants filed protest actions before the Government Accountability Office (GAO). In response to those GAO protests, the VA terminated the contract awarded to plaintiff for convenience and announced plans to "'revalidate[e] the [solicitation] requirement, and issu[e] a new solicitation consistent with the agency's findings upon revalidation.'" ECF No. 1 at 2 (quoting the GAO Decision for protests B-417469.2 and B-417469.3). Now before the court are the parties' cross-motions for judgment on the administrative record (AR).

In ruling on these motions, the court has considered the following: (1) plaintiff's complaint, ECF No. 1; (2) the AR, ECF No. 25; (3) plaintiff's motion for judgment on the AR and memorandum in support, ECF No. 26; (4) defendant's cross-motion for judgment on the AR and response to plaintiff's motion for judgment on the AR, ECF No. 27; (5) intervenor-defendants' cross-motion for judgment on the AR and response to plaintiff's motion for judgment on the AR, ECF No. 28; (6) plaintiff's response to defendant's and intervenor-defendants' cross-motions for judgment on the AR and reply in support of its motion for judgment on the AR, ECF No. 29; (7) intervenor-defendants' reply in support of their motion for judgment on the AR, ECF No. 30; and (8) defendant's reply in support of its cross-motion for judgment on the AR, ECF No. 31.

For the reasons set forth below, this matter is **REMANDED** to the VA, and the parties' motions are **DENIED**.

I.    Background

Plaintiff challenges the corrective action taken by the VA after protests were filed by intervenor-defendants at the GAO challenging the agency's contract award to plaintiff. <u>See</u> ECF No. 1. In summary, plaintiff contends that nothing in the GAO protests "challenged the Solicitation's requirements or sought relief in the form of revalidation of the requirements. Notwithstanding, the VA's proposed corrective action is to cancel [plaintiff's] Contract, revalidate the requirements, and issue a brand new solicitation." <u>Id.</u>

2

at 11, 13 (footnotes and paragraph numbers omitted).  Thus, plaintiff argues, "[t]he proposed corrective action is not rationally related in any way to the protest grounds set forth" and should not be permitted.  Id.

A.      Solicitation Number 36C10G18R0123

The procurement process at issue in this case began in 2018, when the VA issued solicitation number 36C10G18R0123 (the solicitation) seeking proposals for the award of an indefinite delivery indefinite quantity contract for each of five categories of walkers. See ECF No. 25 at 1, 9-13.  Proposals were to be submitted to the VA in August 2018, and were to be evaluated for best value through a multi-step process.  See id. at 1, 171; ECF No. 25-4 at 583-84 (Source Selection Evaluation Plan).  First, the VA was to review the offerors' technical proposals.  See ECF No. 25-4 at 583.  Second, for those offers determined to be technically acceptable, the VA was to perform a physical evaluation. See id. at 583-84.  And third, for those offers that satisfied both phase one and phase two of the process, the VA was to evaluate past performance, socioeconomic considerations, and price.  See id. at 584.

The solicitation described the phase one evaluation as a product literature evaluation meant to determine "whether the proposed Walkers meet the [requirements] and are thus considered acceptable for the physical evaluation."  Id. at 583.  If the proposed items could not "meet [the requirements] or technical literature is not provided including warranty, , [sic] order form; letter of supply; authorized distributor letter (if applicable); and acknowledgment of physical evaluation (if selected)," then the proposal would be eliminated as non-responsive.  ECF No. 25 at 173.

Those proposals that reached phase two scrutiny were to have their products physically evaluated to "determine the extent [of] the features and functions of the proposed walker's safety, stability and durability."  Id.  Safety was to be rated as either pass or fail, and the products were to be rated as excellent, good, acceptable, or unacceptable.  Id.; ECF No. 25-4 at 594.  If the products presented had "cosmetic, structural, or design differences other than what was proposed" or "clearly [did] not meet minimum requirements, as revealed by technical literature review," they would be eliminated in phase two.  ECF No. 25 at 173-74; ECF No. 25-4 at 584.

In phase three of the evaluation, the VA rated offerors' performance risk on a scale of low risk, moderate risk, high risk, and neutral risk, and gave credit for socioeconomic considerations as full credit, partial credit, some credit, and no credit.  See ECF No. 25-4 at 595.  The VA also considered price but did not evaluate it adjectivally. See id.  The contracts were to be awarded in response to those offers that demonstrated the best value considering the following non-price factors "in descending order of importance":  "1. Technical Capability; 2. Past Performance; and 3. Socio-Economic Considerations."  ECF No. 25 at 171.  The agency also planned to consider price, but the "non-price factors when combined are significantly more important than price."  Id.

B.      Proposal Evaluation and Protests

After the proposals were submitted on August 10, 2018, the VA conducted a phase one and phase two evaluation of the proposals.  Two offerors protested in April 2019 the VA's phase two evaluation after their elimination during phase two.  See ECF No. 25-6 at 9-55 (Veteran's Medical Supply, Inc. GAO protest documents), 56-185 (agency-level protest filed by Armstrong Medical Supply Group, LLC).  These protests prompted the VA to issue a corrective action that involved re-evaluating the proposals under phase two. See id. at 12-16.  After re-evaluation, the VA awarded, on February 14, 2020, a contract for each of the five desired categories for walkers, including the award of contract number 36C10G20D0015 to plaintiff.  See ECF No. 25-5 at 209-10 (Award Decision Memorandum); 300-02 (Corrected Award Decision Memorandum); 505 (notice of award to plaintiff).

Following that award, three unsuccessful offerors filed protests on March 4, 2020, at the agency and at GAO challenging the awards in categories three and four for walkers.  See ECF No. 25-6 at 195-290 (agency-level protest of Built Medical, LLC); 291-388 (GAO protest of Armstrong Medical Supply Group, LLC); 389-481 (GAO protest of Congressional Medical Supply, LLC).  The protestors alleged that the VA's evaluation of the offerors' technical capabilities was flawed, and the flawed evaluation resulted in an award based on a "low-price, technically acceptable" framework, rather than the stated best value framework.[2]  See id. at 292, 390.  The protestors argued that "[b]y failing to make qualitative judgments about the relative quality and merits of the offerors' proposed rollators, the Agency's evaluation was not conducted on a best value basis."  Id. at 299, 396.

In response to the protests, the VA sent, on March 5, 2020, a stop-work order to plaintiff.  See id. at 482-83.  Plaintiff itself then filed, on March 9, 2020, an agency-level protest of the contract award in category four for walkers.  See id. at 487-602.  On March 12, 2020, plaintiff also attempted to intervene in the GAO protests.  See id. at 603-04.  Unbeknownst to plaintiff, in the pending GAO protests the VA had filed a "Notice of Corrective Action and Request for Dismissal" on March 10 and 11, 2020.  Id. at 606-08 (GAO decisions dismissing protests); ECF No. 26-1 at 30 n.13.  On March 17, 2020, the GAO dismissed the protests as academic—without addressing plaintiff's attempt to intervene, but noting that the protestors did not object to the VA's proposed corrective action of "canceling the awards . . . to [plaintiff] and [the category four awardee], revalidating the requirements, and issuing a new solicitation consistent with the agency's findings upon revalidation."  Id. at 607; see also id. at 606.  The VA then dismissed

---

[2]      The VA determined that the protest filed by Built on February 28, 2020, was not timely and dismissed it.  See ECF No. 25-6 at 193-94.  Because that protest is not at issue here, the court addresses only the protests filed on March 4, 2020, by intervenor-defendants.

plaintiff's protest of the category four award on the same ground—the corrective action rendered the protest moot.  Id. at 609.

C.    The Corrective Action

On March 27, 2020, the VA performed the first step of its proposed corrective action and issued a termination for convenience to plaintiff.  See id. at 615-16.  On March 30, plaintiff objected to the termination in a five-page letter to the contracting officer.  Id. at 610-14 (plaintiff's letter to the VA, objecting to the contract cancellation).  Plaintiff argued that the VA "has not been able to state anything that was specifically wrong with the Solicitation or its requirements." Id. at 613.  Plaintiff added that the cancellation was "manifestly unjust and an arbitrary and unreasonable exercise of the VA's authority to conduct procurements." Id.  On April 2, 2020, the VA executed a memorandum for the record purportedly summarizing the various protests and memorializing the reasoning that led to the corrective action.  See id. at 628-31.  The cancellation was finalized on April 9, 2020.  See id. at 632-35.

Plaintiff filed this protest action on April 10, 2020.  See ECF No. 1.  In the complaint, plaintiff seeks injunctive relief on the basis that the "VA's proposed corrective action is vague, excessive, unnecessary, arbitrary, and unreasonable," and "[b]ecause of the clear inconsistency between the law and the VA and GAO's actions, . . . the VA's corrective action is not reasonable." Id. at 14-16.  The parties' motions for judgment on the AR are fully briefed and ripe for decision.

II.    Legal Standards

A.    Bid Protest Review Generally

In its complaint, plaintiff invokes this court's bid protest jurisdiction.  See ECF No. 1 at 3.  The Tucker Act grants this court jurisdiction:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (2012).

The court's bid protest analysis "proceeds in two steps." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005).  First, the court determines pursuant to the Administrative Procedure Act's (APA) standard of review, 5 U.S.C. § 706 (2018), whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." Glenn Def. Marine (ASIA), PTE Ltd. v.

United States, 720 F.3d 901, 907-08 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4)).  An agency's decision meets this standard when the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  In making this evaluation, the court considers "whether the agency has examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  Cybertech Grp., Inc. v. United States, 48 Fed. Cl. 638, 646 (2001) (citations omitted).

If the court finds that the agency acted in error, the court then must determine whether the error was prejudicial.  See Bannum, 404 F.3d at 1351.  To establish prejudice, "the protester must show 'that there was a substantial chance it would have received the contract award but for that error.'"  Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)).  "In other words, the protestor's chance of securing the award must not have been insubstantial."  Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

Given the considerable discretion allowed contracting officers, the standard of review is "highly deferential."  Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000).  As the United States Supreme Court has explained, the scope of review under the arbitrary and capricious standard is narrow.  See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974).  "A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment,'" and "'[t]he court is not empowered to substitute its judgment for that of the agency.'"  Id. (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)); see also Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1368-69 (Fed. Cir. 2009) (stating that under highly deferential rational basis review, the court will "sustain an agency action 'evincing rational reasoning and consideration of relevant factors'") (citing Advanced Data Concepts, 216 F.3d at 1058).

B.      Review of Bid Protests Challenging Corrective Action

The same "'highly deferential' 'rational basis' standard'" applies in the corrective action context.  See Dell Fed. Sys., L.P. v. United States, 906 F.3d 982, 992 (Fed. Cir. 2018) (citation omitted); see also Jacobs Tech. Inc. v. United States, 100 Fed. Cl. 186, 190 (2011) (stating that "contracting officers are entitled to broad discretion in the procurement process, . . . including in their decisions to take corrective action") (internal citation omitted).  In Dell Federal, the United States Court of Appeals for the Federal Circuit reviewed a decision from this court that permanently enjoined the United States Army from proceeding with corrective action on a procurement for computer hardware.

See <u>Dell Fed.</u>, 906 F.3d at 986.  This court had "agreed that the Army had rationally identified procurement defects," but found that the "'Army's contemplated corrective action was overbroad'" and its "corrective action 'must narrowly target the defects it is intended to remedy.'"  <u>Id.</u> at 989 (quoting the trial court's decision, <u>Dell Fed. Sys., L.P. v. United States</u>, 133 Fed. Cl. 92, 104 (2017)).

The Federal Circuit reversed this court's decision, holding that "[t]he Court of Federal Claims based its decision on an error of law because corrective action only requires a rational basis for its implementation."  <u>Id.</u> at 991.  The appeals court explained that "[t]he rational basis test asks 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'"  <u>Id.</u> at 992 (quoting <u>Banknote Corp. of Am., Inc. v. United States</u>, 365 F.3d 1345, 1351 (Fed. Cir. 2004)).  Rather than applying this rational basis test, this court had applied a "heightened 'narrowly targeted' standard," which the Federal Circuit concluded was "an overly stringent test for corrective action."  <u>Id.</u> at 992-93 (citing <u>Ala. Aircraft Indus., Inc.-Birmingham v. United States</u>, 586 F.3d 1372, 1376 (Fed. Cir. 2009)).

The Federal Circuit also rejected appellees' argument that courts "should view the 'narrowly targeted' requirement not as a heightened standard but rather as an application of the rational basis standard."  <u>Id.</u> at 993.  According to the appeals court, requiring a narrowly targeted solution to address a procurement defect "would undermine our deferential APA review, which statutorily mandates that we determine 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'"  <u>Id.</u> at 994 (quoting <u>Banknote</u>, 365 F.3d at 1351).

III.    Analysis

According to plaintiff, the VA's corrective action in this case cannot stand because the agency's decision "to cancel the award to [plaintiff], revalidate the requirement, and issue a new solicitation consistent with the agency's findings upon revalidation is not rationally related to the defect to be corrected."  ECF No. 26-1 at 33.  As the Federal Circuit explained in <u>Dell Federal</u>, "[t]he rational basis test asks 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'"  906 F.3d at 992 (quoting <u>Banknote Corp.</u>, 365 F.3d at 1351).  Thus, the court must review the agency's explanation of its corrective action decision to determine whether the action was within the agency's discretion.  In this case, the only apparent explanation for the VA's action is contained in the contracting officer's April 2, 2020 memorandum.  <u>See</u> ECF No. 25-6 at 628-31.  The court has reviewed the AR and can find no other documentation of the agency's reasoning.[3]

---

[3]     In their briefing, the parties referenced a notice of corrective action submitted to GAO in response to intervenor-defendants' March 4, 2020 protests, <u>see</u> ECF No. 26-1 at 30 n.13; ECF No. 27 at 9; ECF No. 28-1 at 20, however, such document is not included in the AR.

Plaintiff argues that the contracting officer prepared his memorandum well after the corrective action decision was made and after plaintiff had "strenuously object[ed]" to the action. ECF No. 26-1 at 34. Thus, plaintiff concludes, the memorandum "was prepared <u>post hoc</u> and does not demonstrate a contemporaneous rationale for the Agency's actions before the GAO on March 11, 2020," and therefore may not be considered by the court. <u>Id.</u> Plaintiff cites <u>Jacobs Tech. Inc. v. United States</u>, 100 Fed. Cl. 198 (2011), in support of its argument, noting that "the Supreme Court has held that <u>post hoc</u> rationalizations that are part of the administrative record should not be relied upon as the basis for reviewing an agency's decision." <u>Id.</u> (quoting <u>Jacobs Tech.</u>, 100 Fed. Cl. at 208).

Defendant concedes that "there was some delay in finalizing the memo after the VA's March 10-11, 2020 notices to GAO," but asserts that it was prepared "seven days before [plaintiff] filed its April 9, 2020 pre-filing notice, seven days before the contracting officer executed the termination of [plaintiff's] contract, and eight days before [plaintiff] filed its complaint." ECF No. 27 at 19-21. Defendant thus concludes that the memorandum was prepared after a "modest delay," is "not new information unavailable at the time of the decision," and is "not a new defense prepared in the middle of litigation," and that the court, therefore, should consider it. <u>Id.</u> at 20-21. Defendant also points out that the memorandum is "the sole explanation for the contracting officer's decision," and, "[w]ithout it, this matter would have to be remanded to the agency." <u>Id.</u> at 21.

The court agrees with defendant that the contracting officer's April 2, 2020 memorandum is the sole explanation for the VA's corrective action decision before the court. And, while it may have been created before the plaintiff filed this protest, the court agrees with plaintiff that the memorandum was not made contemporaneously with the decision making process. It is well-established that <u>post hoc</u> rationales are "an inadequate basis for review." <u>Citizens to Preserve Overton Park</u>, 401 U.S. at 419. Any justification for a decision should be documented during the decision making process. <u>See, e.g.</u>, <u>CRAssociates, Inc. v. United States</u>, 95 Fed. Cl. 357, 376 (2010) (citing <u>Motor Vehicle Mfrs. Ass'n</u>, 463 U.S. at 43, and explaining that this approach reinforces the agency's obligation to use the relevant data to articulate a satisfactory explanation for its action "before, not after, it renders a decision"). Therefore, the court can neither accept nor give weight to the contracting officer's explanation.

Without the April 2, 2020 memorandum, the AR is devoid of evidence setting forth the basis for the VA's decision to take corrective action. Without an adequate record to review, the court cannot evaluate whether the agency had a rational basis for the action taken. <u>See</u> <u>Dell Fed.</u>, 906 F.3d at 992. The Tucker Act gives this court the authority "to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2). Rule 52.2 of the Rules of the United States Court of Federal Claims (RCFC) further

provides that "[i]n any case within its jurisdiction, the court, on motion or on its own, may order the remand of appropriate matters to an administrative or executive body or official" by directing the parties "as the court deems proper and just," establishing the duration of the remand period, specifying a proper stay, and asking a party to report to the Court "every 90 days or less" on the status of the remand proceedings.  RCFC 52.2(a), (b)(1).

Because the AR in this case lacks the necessary information for the court to review the VA's corrective action decision, a remand of this matter is necessary.  The court therefore remands this matter to the VA to address the grounds for the corrective action.

IV.    Conclusion

Accordingly,

(1)    Pursuant to 28 U.S.C. § 1491(a)(1) and RCFC 52.2(a), plaintiff's claims are **REMANDED** to the United States Department of Veterans Affairs so that the agency may address the grounds for the corrective action taken during the procurement at issue in this matter.

(2)    The initial duration of the remand is **one-hundred eighty days** from the date of this opinion, or until **February 1, 2021**, which may be extended, upon motion, pursuant to RCFC 52.2(c), or which may be shortened should the agency complete its reconsideration process sooner;

(3)    On or before **August 7, 2020, at 12:00 p.m. eastern time**, defendant is directed to **FILE** a **status report** providing the court with the name and address of the agency representative on whom the court should serve a certified copy of this opinion;

(4)    Plaintiff's motion for judgment on the AR, ECF No. 26, is **DENIED**;

(5)    Defendant's cross-motion for judgment on the AR, ECF No. 27, is **DENIED**;

(6)    Intervenor-defendants' cross-motion for judgment on the AR, ECF No. 28, is **DENIED**;

(7)    The clerk's office is directed to **STAY** this case until further order of the court;

(8)    On or before **August 25, 2020**, the parties are directed to **CONFER** and **FILE** a **notice** attaching the parties' agreed upon redacted version of this opinion, with all competition-sensitive information blacked out;

(9)    Pursuant to RCFC 52.2(b)(1)(D), the parties are directed to **FILE** a **joint status report** on or before **October 5, 2020, December 4, 2020,** and **January 29, 2021**, indicating the status of proceedings on remand; and

(10)   Pursuant to RCFC 52.2(e), the parties are directed to **FILE** a **notice** within **five days** after the conclusion of remand proceedings that sets forth the parties' positions regarding whether further litigation of this matter is necessary.  If further proceedings are appropriate, the parties shall include a proposed schedule to govern this case going forward.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge